# UNITED STATES DISTRICT COURT

_____ SOUTHERN _____ DISTRICT OF _____ CALIFORNIA _____

FILED

07 APR 30 PM 12:04

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

**CSC Holdings, Inc. (Optonline.net)**
**1111 Stewart Avenue**
**Bethpage, New York**

_UNSEALED AS OF 11/15/09_
_ORDERED SEALED_

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

### CASE NUMBER:
### '07 MJ 0944

I, __Michael B. Cochran__ being duly sworn depose and say:

I am a(n) _Special Agent of U.S. Immigration and Customs Enforcement_ and have reason to believe that

on the person of or _X_ on the property or premises known as (name, description and/or location)

CSC Holdings, Inc. (Optonline.net)
1111 Stewart Avenue
Bethpage, New York
(as also described on Attachment A-1)

in the _____ Eastern _____ District of _____ New York _____
there is now concealed a certain person or property, namely (describe the person or property)

### SEE ATTACHMENT B-1

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

Evidence of the commission of a criminal offense

concerning a violation of Title _22_ United States Code, Section(s) _2778(b)(2) and (c) and 22 CFR 127.1(a)(3) and_
_18 U.S.C. § 554_
The facts to support a finding of Probable Cause are as follows:

### SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part thereof.    _X_ Yes    ___ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

_4/30/07_ at _San Diego CA_
Date                City and State

**CATHY ANN BENCIVENGO**
**U.S. MAGISTRATE JUDGE**
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT

I, Michael B. Cochran, being duly sworn, state as follows:

## I.   EXPERIENCE AND TRAINING

1.    I am a Special Agent (SA) with the U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS).  I have been so employed since January 2003. Prior to my employment with ICE, I served as a SA with the United States Air Force Office of Special Investigations (AFOSI).

2.    I am a graduate of the Federal Law Enforcement Training Center ("FLETC"), Glynco, Georgia.  At FLETC, I was trained in, among other things, criminal investigative techniques, and export-control investigations.  I have participated in and directed criminal investigations involving, among other things, the illegal export of military and defense articles out of the United States.  I have received formal training and extensive on-the-job experience and training in the laws and regulations relating to the Arms Export Control Act (AECA), 22 U.S.C. § 2778, and International Traffic in Arms Regulations (ITAR), 22 CFR 120-130, and I have conducted and participated in investigations of violations of these laws and regulations.

3.    My knowledge of the facts alleged in this affidavit arises from my training and experience, my personal observations, my participation in the federal investigation described herein, my conversations with other law enforcement agents involved in this investigation, and my review of records obtained during this investigation.  Because this affidavit is submitted for the limited purpose of securing a search warrant as described herein, it does not include every fact known to me concerning the investigation.

1

## II.    PURPOSE OF THIS AFFIDAVIT

4.    This affidavit is submitted in support of applications for warrants to search the premises of: (1) CSC Holdings, Inc. (Optonline.net) 1111 Stewart Ave, Bethpage, New York, as also described in Attachment A-1, incorporated herein by reference; and (2) MSN/Hotmail 1065 La Avenida, SVC4/1120, Mt. View, California, as described in Attachment A-2, incorporated herein by reference.  Based on the information set forth herein, I submit there is probable cause to believe that the records of CSC Holdings, Inc. and MSN/Hotmail contain evidence of conspiracy to export defense articles without a license, in violation of 22 U.S.C. § 2778(b)(2) and (c) (the Arms Export Control Act) and 22 CFR 127.1 (International Traffic in Arms Regulations), and conspiracy to smuggle goods from the United States, in violation of 18 U.S.C. § 554.

## III.    THE ARMS EXPORT CONTROL ACT

5.    The AECA regulates the export of defense articles and services from the United States.  Among other things, the AECA authorizes the President of the United States to: (1) designate defense articles and defense services on the United States Munitions List; (2) require licenses or other approvals for the export of defense articles on the USML; and (3) promulgate regulations to implement the AECA.  The regulations are known as the International Traffic in Arms Regulations ("ITAR"), Title 22, Code of Federal Regulations, Sections 120-130.  The United States Department of State, Directorate of Defense Trade Controls ("DDTC") administers the ITAR and regulates the export of defense articles.  It is the policy of the United States to deny licenses and other approvals for exports of defense articles destined for China.  22 CFR 126.1.

2

IV.    **THE 7270A-200K ACCELEROMETER**

6.      Endevco Corporation (ENDEVCO) is located in San Juan Capistrano, California.

ENDEVCO manufactures a product identified as a 7270A-200K piezoresistive accelerometer.  I

have reviewed a certification issued by the United States Department of State, Directorate of

Defense Trade Control, confirming that the 7270A-200K accelerometer is a defense article on

the United States Munitions List, Category XII(d).  Category XII(d) covers "[i]nertial platforms

and sensors for weapons or weapon systems; guidance, control and stabilization systems . . . ;

astrocompasses and star trackers and military accelerometers and gyros."  22 CFR 121.1,

Category XII(d).

V.     **INVESTIGATION OF QING LI**

7.      In March 2007, Russell Spittler, Director of Government Affairs for ENDEVCO,

forwarded to me an email received by an ENDEVCO employee from Qing Li at

qingli@optonline.net.  The email, dated March 19, 2007, stated: "A client of mine in China is in

need of sensor: ENDEVCO 7270A-200K.  The scale is 20G.  Do you have this product and can

you provide me with picture?"  Mr. Spittler also provided me with ENDEVCO's reply email to

qingli@optonline.net.  ENDEVCO stated: "Hi Qing, The model 7270A is export controlled by

the U.S. government and can not be exported."

8.      At my direction, an ENDEVCO representative sent a second email to

qingli@optonline.net, referring Li to an ICE undercover storefront located in San Diego,

California.  Specifically, the email advised Li that "we have a trading company that assisted us in

the past with these situations."  The email from ENDEVCO provided Li with the UC storefront's

3

email address.

9.    On April 2, 2007, the UC storefront received an email from qingli@optonline.net. The email stated: "Hello, I am looking for sensor for my client in China. The model is: ENDEVCO 7270A-200K. The scale is 20G. Do you have this product and could you provide me with picture? I can be reached by phone also at: 203-406-9984; 203-962-2718(cell). Thanks."

10.    On April 2, 2007 the UC storefront responded with an email to qingli@optonline.net, stating that the UC storefront had a number of 7270A-200K accelerometers available. The email stated, in part: "How many of these items do you require? As you know, these items are export controlled so you will need to keep this in mind if you are serious about proceeding with this purchase." The email included an attachment of three photographs of the 7270A-200K accelerometers.

11.    On April 2, 2007, Li emailed the UC storefront and advised the first order would be for around 20-30 units. She further advised that "[i]f the products work well, they likely need around additional 100." Li also stated: "You were recommended by ENDEVCO's sales people who said you assisted them with similar situation before. Do you have any suggestions as to how should the process proceed?"

12.    On April 3, 2007, the UC storefront responded with an email to Li at qingli@optonline.net. The email stated:

> I have enough inventory to cover your order. I do not think that the US Government will give us a license to export these items to China. If you want to, you can apply for a license but I do not want my companies name on that application.
>
> If you still want to proceed without the license, there are ways of doing it. But first you need to provide me with more information as to where you want them delivered. The delivery location will greatly influence the way in which this transaction will take place.

13.     On April 4, 2007, the UC storefront received an email from Li stating that she

thought "the location may be likely in Hong Kong." Li asked for a price quote. The UC

storefront responded to Li at qingli@optonline.net with an email stating:

> At the quantity of 30 we can sell at a unit cost of $2500.00 plus a calibration fee
> of $115.00 each. Our fee is 20 % because of the nature of the sale. (total price
> $94140.00) This price will be good for delivery to you in the US. I would prefer
> that you take responsibility for getting them to Hong Kong as I am already at
> enough risk just selling them to you. If you and your customer can agree to these
> terms and price please let me know as soon as possible.

14.     On April 4, 2007, the UC storefront received an email from Li stating:

> I don't need the products. I am just actually doing a favor for a friend in China to
> find the products. I have forwarded all the information to the friend and it's up to
> them for the decision now. I have nothing to do with it. I have told the friend that
> I won't be involved anymore due to the risk attached. I think they will contact
> you directly for any further questions. Sorry for any confusion to you.

15.     On April 5, 2007, the undercover agent responded to Li with an email requesting

that Li have her friend contact him as soon as possible "as I am getting many requests." On the

same day, the UC storefront received an email from Li, stating: "Thanks. I will let me friend

know. Are other requests also from China?" The undercover agent sent back to Li an email

stating: "I think some of them are from China." On April 6, 2007, Li sent an email to the UC

storefront stating: "I had told my friend to contact you as soon as possible. I think he will

contact you shortly."

16.     On April 9, 2007, the UC storefront received an email from "china

man999<chinaman326@hotmail.com>." The email stated:

> I find you through my friend in USA. The type of the product that I want is
> ENDEVCO 7270A-200K. I have confirmed the type of the product. I want to
> purchase 30 units first and 100 or more units lately. But you price is much more
> than my expectation, and please forgive me kindly requesting a lower price. I
> expect to deliver in Hongkong. I am waiting for you reply about the new price ,
> payment manner and delivery date.

The author was identified only as "wang."

17.    According to the phone call history for the UC storefront telephone line, on April

9, 2007, the UC storefront received two calls from (203) 406-9984, but the caller did not reach

the undercover agent. Li had identified (203) 406-9984 as her telephone number in her initial

email to the UC storefront.

18.    Also on April 9, 2007, the UC storefront sent an email to

chinaman326@hotmail.com stating that the best the undercover agent could do was drop the unit

price to $2450. The UC email stated:

> Since you are willing to accept delivery in Hong Kong instead of China I will
> provide delivery to you. As I told Qing, the items need approval from my
> government to send to China and we do not have it. For this reason, I will accept
> payment in the form of a wire transfer for the full amount prior to export. I do not
> want to lose my money if they are seized by customs. I have the items here and
> ready to ship so delivery time will be prompt.

19.    Also on April 9, 2007, the undercover agent made a consensually monitored

phone call to Li at (203) 406-9984 (after the UC storefront received the two calls from that

telephone number that day). I have listened the recording of that call. During the call, Li and the

undercover agent discussed Li's involvement in the transaction. Li told the undercover agent she

did not want her name associated with any of the emails being sent back and forth between the

undercover agent and her friend. Li said she went to China for Chinese New Year and while she

was there she met a friend. Her friend asked if she could help him get a part (7270A-200K

Accelerometers). Li stated that, when she returned to the United States, she contacted

ENDEVCO about the part but was told the part could not be exported. At that point, she

contacted the undercover agent. Li advised her friend does not speak very good English, so at

some point she might need to contact the undercover agent to help her friend.

20.    From April 10, 2007 through 26, 2007, the UC storefront exchanged numerous

email messaged with "Wang" at chinaman326@hotmail.com. The messages have involved

ongoing negotiations concerning price, payment terms and delivery. For example, on April 15,

2007, the UC storefront received an email from Wang including the following statements:

> I understand the nature of the business and the risks we are both facing, but I hope you can quote me a more reasonable price in order to have my client accept.
>
> . . . .
>
> I understand that you hope to minimize the risk by delivering the products only after you have received full payment in advance. However , this is too risky for us to accept , As you know, we are also taking additional risk at Hong Kong custom when we take the delivered products from Hong Kong to Mainland China . As I mentioned, we are very likely to have a followed order around 100 units. I hope you understand the risk we will bear for the current and the next 100 unit transactions if we pay you full amount in advance. I hope we can figure out a better way for both of us , I would like to make the following suggestions:
>
> A,) If you have a friend or partner in Hong Kong, you can delivery the products to him/her, and then we can make physical transaction in Hong Kong, We pay your friend/partner full payment at the same time of the delivery from your friend.
>
> B,) Escrow payment, if it is feasible.

21.    During the negotiations with "Wang," all conducted through email messages, the undercover agent eventually agreed to lower the unit price and also agreed to personally deliver the accelerometers to Hong Kong. The undercover agent advised Wang that the UC storefront would accept a 35 percent down payment by wire transfer and would accept the remaining payment through an escrow account through a United States bank of Wang's choosing. With respect to the escrow account, the undercover agent sent an email to Wang on April 20, 2007, stating: "I would suggest that the terms for the escrow be very general as to hide the nature of our transaction." On April 26, 2006, Wang replied with an email from chinaman326@hotmail.com stating, in part: "What I suggested is to have the down payment made through escrow from a US bank. Since this is the first order through a new supplier, I think my client would feel more comfortable this way. We will makc [sic] the term as general as possible."

22.    On April 26, 2007, the UC storefront sent an email to Wang stating, in part: "The

down payment must be paid via wire transfer. If it would make you more comfortable, feel free to have someone inspect the items here in the US before you send the downpayment."

23.     On April 18, 2007, I served Customs Export Subpoenas on email service providers Optonline.com and MSN/Hotmail. I requested subscriber information on the following email addresses: qingli@optonline.com and chinaman326@hotmail.com.

24.     On April 18, 2007, MSN/Hotmail responded to the above-mentioned subpoena. The response showed that the email address chinaman326@hotmail.com was registered on April 9, 2007, at approximately 1:24am (only about 10 minutes before the first email from that address was sent to the UC storefront). The person listed his/her name as "china, man999" and listed a state and country of Beijing, China.

25.     My review of the Internet Protocol (IP) history for chinaman326@hotmail.com showed ten login dates and times. Through internet-based IP research sites, I determined that nine of the ten logins occurred in the People's Republic of China (PRC). However, one login occurred in Stamford, Connecticut. I have conducted an Accurint search and have discovered a Qing Li with an address listed as 122 Forest Street 122, Stamford, Connecticut, and with a telephone number of (203) 406-9984 (the same number provided by Li during the communications described previously). A search of the IP address (208.47.163.34) for the Connecticut login showed the IP registrant name as the Ferguson Public Library, 1 Public Library Plaza, Stamford, CT 06901. The login took place at approximately 12:50 (PDT) on April 18, 2007.

26.     On April 19, 2007, I subpoenaed the Ferguson Public Library for a list of individuals who used the library computers on April 18, 2007. On April 23, 2007, I spoke with George Nichols of the legal affairs department at the Ferguson Public Library. Nichols advised all of the computers in the library operated off of the same IP address. For this reason, I asked

Nichols to provide information on people who used the computers on April 18, 2007, between

1500hrs and 1700 hrs Eastern Standard Time.

27.    On April 23, 2007, I received an email from Nichols attaching a list of login times

and dates, library card numbers, number of minutes logged in, and the name associated with the

card.  Line 76 of the list showed that, at 1606hrs on April 18, 2007, an individual used Li's

library card to log into the library computer system, and the individual remained logged in for

approximately 14 minutes.  Thus, it appears that, despite Li's statement on April 5, 2007, that

she has "nothing to do" with the accelerometer transaction, she (or someone using her library

card) logged onto the chinaman326@hotmail.com.

## VI.    CSC HOLDINGS, INC. AND MSN/HOTMAIL

28.    CSC Holdings, Inc. (through Optonline.net) and MSN/Hotmail provide

subscribers with access to electronic mail (email).  Email service allows the subscribers to

communicate with other computer users who have electronic mail systems.  Through the use of

email, the subscriber is able to send and receive messages, which can include an attached file

containing text messages, graphic image files or other file types.  These files are capable of being

stored on a user's computer or other computer media, and are also capable of being stored

remotely by Optonline.net or MSN/Hotmail.

29.    On April 26, 2007, I sent MSN/Hotmail a preservation letter pursuant to 18

U.S.C. § 2703(f), requesting that MSN/Hotmail preserve, among other things, all account records

and email records pertaining to user name chinaman326@hotmail.com.

30.    Title 18, United States Code, Section 2703(g) provides that the presence of an

officer shall not be required for service or execution of a search warrant of the type sought in this

affidavit.  Moreover, if federal agents were required to search the computer networks at

MSN/Hotmail and CSC Holdings/Optonline for the relevant accounts and then to analyze the

contents of those accounts on the premises, the impact on those businesses could be substantial. Accordingly, I request that the Court direct that the respective warrants be served and executed in the manner set forth in Attachments B-1 and B-2, attached hereto and incorporated herein by reference.

## VII.    CONCLUSION

31.    Based on the information set forth in this affidavit, I submit there is probable cause to believe that Li and the individual identified as "Wang": (1) have conspired and are conspiring to export defense articles without a license, in violation of 22 U.S.C. § 2778(b)(2) and (c) and 22 CFR 127.1; and (2) have conspired and are conspiring to smuggle goods from the United States (including conspiring to facilitate the sale of articles known to be intended for exportation contrary to United States law), in violation of 18 U.S.C. § 554. Based on the foregoing, I also submit there is probable cause for the court to issue search warrants for the places described in Attachments A-1 and A-2 for the items described in Attachments B1 and B2.

32.    Because this is an ongoing investigation using an undercover agent and an undercover storefront, I request that this application and affidavit be filed under seal.

Michael B. Cochran, Special Agent
Immigration and Customs Enforcement

Subscribed to and sworn before me on this ___30th___ day of ___April___, 2007

UNITED STATES MAGISTRATE JUDGE

**CATHY ANN BENCIVENGO**

10

## ATTACHMENT A-1

CSC Holdings, Inc. (Optonline.net) is an email service provider located at 1111 Stewart Avenue, Bethpage, New York.

# ATTACHMENT A-2

MSN/Hotmail is an email service provider located at 1065 La Avenida, SVC4/1120, Mountain View, California.

**ATTACHMENT B-1**

I.    **Service of Warrant and Copying of Files by CSC Holdings, Inc. (Optonline.net)**

The following procedures shall govern the service and execution of this warrant:

A.    The officer executing this warrant shall complete service by any lawful method including faxing the warrant (with CSC Holdings, Inc.'s consent) to the location described on Attachment A-1.

B.    The officer executing this warrant shall permit CSC Holdings, Inc. (Optonline.net), as custodian of the computer files described in Section II below, to locate the files, copy them onto removable electronic storage media or print them out as paper copies and deliver the copies to the officer, who need not be present during this process at the location specified in the warrant.

II.    **Computer Files to be Copied and Delivered by CSC Holdings, Inc. (Optonline.net)**

All subscriber information, user information, electronic mail (email), images, text messages, profiles, methods of payment, billing records, access logs, and histories associated with the following user name and/or email account: qingli@optonline.net.

III.    **Search of the Date Supplied**

Following receipt of the files described in Section II of this attachment, the contents will be analyzed by federal law enforcement agents to identify communications and other data falling with the following categories:

A.    Any and all files, documents, items, and records referring to Endevco, accelerometers, 7270A-200K, Wang, chinaman326, or man999;

B.    Any and all files, documents, items and records referring to exports, export licenses, or international shipments from the United States of accelerometers or other defense articles; and

C.    Any and all files, documents, items and records that show dominion and control of email account qingli@optonline.net;

which evidence will tend to prove the commission of violations of 22 U.S.C. § 2778(b)(2) and (c) and 22 CFR 127.1 and 18 U.S.C. § 554. Such data will be copied to separate media. The original media will be sealed and maintained solely for purposes of establishing authenticity, if necessary.

## ATTACHMENT B-2

**I.      Service of Warrant and Copying of Files by MSN/Hotmail**

The following procedures shall govern the service and execution of this warrant:

A.      The officer executing this warrant shall complete service by any lawful method including faxing the warrant (with MSN/Hotmail's consent) to the location described on Attachment A-2.

B.      The officer executing this warrant shall permit MSN/Hotmail, as custodian of the computer files described in Section II below, to locate the files, copy them onto removable electronic storage media or print them out as paper copies and deliver the copies to the officer, who need not be present during this process at the location specified in the warrant.

**II.     Computer Files to be Copied and Delivered by MSN/Hotmail**

All subscriber information, user information, electronic mail (email), images, text messages, profiles, methods of payment, billing records, access logs, and histories associated with the following user name and/or email account: chinaman326@hotmail.com.

**III.    Search of the Date Supplied**

Following receipt of the files described in Section II of this attachment, the contents will be analyzed by federal law enforcement agents to identify communications and other data falling with the following categories:

A.      Any and all files, documents, items, and records referring to Endevco, accelerometers, 7270A-200K, or Qing Li;

B.      Any and all files, documents, items and records referring to exports, export licenses, or international shipments from the United States of accelerometers or other defense articles; and

C.       Any and all files, documents, items and records that show dominion and control of email account chinaman326@hotmail.com

which evidence will tend to prove the commission of violations of 22 U.S.C. § 2778(b)(2) and (c) and 22 CFR 127.1 and 18 U.S.C. § 554. Such data will be copied to separate media. The original media will be sealed and maintained solely for purposes of establishing authenticity, if necessary.